NATCHITOCHES FINANCE CO. v.
SMITH et al.

No. 5506.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1937.

Rehearing Denied July 19, 1937.

916

Russell E. Gahagan, of Natchitoches, for appellant.

John G. Gibbs, of Natchitoches, for appellees.

TALIAFERRO, Judge.

This appeal is prosecuted from a judgment sustaining an exception of no cause of action interposed by the defendant Critt Rogers to plaintiff's suit on a promissory note executed by him and one Ben Smith and another. He is sued as indorser. The note was originally for $300 payable in twenty equal monthly installments, with interest on each monthly balance at the rate of 3½ per cent. per month. It was executed March 15, 1930. The balance due thereon on October 10, 1934, was $123.82. Plaintiff sues for this balance, plus 3½ per cent. per month from October 10, 1934, and 10 per cent. thereof as attorney's fees. Smith, the maker, made no appearance. Judgment by default against him was confirmed. He is not now before the court. The other signer was not impleaded.

The exception does not suggest wherein the petition is faulty to the degree of not disclosing a cause of action. In oral argument and brief in this court, exceptor amplifies the exception and discloses his position thereon, in which the lower court concurred. It is this: That the petition does not affirmatively set out that the occupational license tax required by Act No. 7 of the Legislature of 1928, Ex.Sess., known as the Small Loan Law, and the franchise tax, as fixed and levied by Act No. 10 of the 1st Extra Session of 1935, and prior laws on the same subject, have been annually paid by plaintiff. Plaintiff's corporate integrity and its capacity to sue are not otherwise challenged. We are quite certain that the exception is without the virtue necessary to raise and tender for adjudication the issue sought by its author.

The Small Loan Act prescribes that certain things be done by persons,

partnerships, and corporations as a condition precedent to the loaning and collecting of money, in keeping with its provisions. Application for a license must be in writing. It must contain the information required by the Act. A bond for $1,000, of the tenor and conditions prescribed, shall be given and a license fee of $200 paid, after which, if other things are satisfactory to the state bank commissioner, a license will be issued to the applicant. The license warrants the holder to loan money in amounts not exceeding $300, and the charge of interest thereon at not more than 3½ per cent. monthly. The license fee is payable each year and, when accepted by the commissioner, the right to operate under the act for a year automatically arises. Failure to pay the license fee or put the bond in satisfactory condition, when required, works a forfeiture of the license theretofore issued. However, revocation of such license for these or other causes does not prevent the person thus affected from loaning money at 8 per cent. per annum, or from collecting that which has previously been loaned at a larger interest rate. This right is virtually recognized in the first paragraph of section 18 of the act, which reads as follows: "No person, copartnership or corporation, except as authorized by this Act, shall directly or indirectly charge, contract for or receive any interest, discount, or consideration greater than eight (8) per centum per annum upon the loan, use or forbearance of money, goods or things in action, or upon the loan, use or sale of credits, of the amount or value of Three Hundred Dollars ($300.00) or less."

Even if plaintiff had no license to operate under the provisions of Act No. 7 of 1928, Ex.Sess., when the note was given, had none when this suit was filed, nor had such in the interim, it would unquestionably be vested with the right to sue on the note and recover the principal due thereon, plus interest at 8 per cent. per annum. If more interest has been paid than legally collectible, article 2924 of the Revised Civil Code, as amended by Act No. 68 of 1908, may be invoked to secure equitable adjustment thereof. The relative rights of the parties, issues comprehended within the facts, possible and otherwise, above mentioned, may only be intelligently considered and passed upon after a trial on the merits. Pertinent to this discussion, see South Shreveport Finance & Loan Company v. Stephenson, 184 La. 916, 168 So. 100, in which, inter alia, it was held: "Under Small Loan Law, loan was not annulled after expiration of lender's license, notwithstanding that lender could not thereafter collect interest at greater rate than 8 per cent. per annum (Act No. 7 of 1928, Ex.Sess. § 1)."

Act No. 10 of 1935, 1st Ex.Sess., levies a franchise tax of $2 for each $1,000 of the amount of the capital stock, surplus and undivided profits, determined as provided therein, of each domestic corporation and of all foreign corporations, comprehended within its provisions, with named exceptions. It prescribes the political machinery for the collection of the tax and definitely lays down requirements to be met by the corporations thereby affected. Enforcement of payment of the amount due by any corporation by seizure and sale of its property is authorized, and the steps antecedent to such action are set out. But we find nothing in the act that even intimates that failure to timely pay said tax in whole or part inhibits the defaulting corporation from suing in the courts of the state. If the Legislature had intended such drastic punishment for an offending tax debtor, most certainly such intent would have been incorporated in the act in no uncertain terms; and, of course, if the right to sue is unaffected by arrearage in taxes, surely it is unnecessary to the disclosure of a cause or right of action in a suit to affirmatively aver that the petitioner has paid franchise taxes due by it. Whether such tax is paid annually by a corporation liable therefor is a matter that addresses itself to the state. Individual citizens have no direct or personal interest therein.

The right to sue in courts of justice to enforce or vindicate vested interests is emphatically vouchsafed to all corporations legally created and existing. Article 443 of the Revised Civil Code; Act No. 250 of 1928, paragraph (a) of subsection 2 of section 12.

Being creatures of the law and perennially subject to its control, the privilege of appearing in the courts of the state may be qualified or, even for of-

fenses or infractions of the law, denied entirely to corporate bodies. But, as before stated, such a purpose or intent on the part of the lawmaking body should be obvious. The two acts herein discussed contain no such restrictions.

The judgment appealed from is erroneous and it is, for the reasons herein assigned, annulled, reversed, and set aside, and this case remanded to the court a quo for further proceedings. Costs of appeal are assessed against appellee.