## CENTRAL LUMBER CO. v. JONES.
### No. 5498.

Court of Appeal of Louisiana.
Second Circuit.
June 30, 1937.

D. J. Hyams and Rusca & Cunningham, all of Natchitoches, for appellant.

Jas. W. Jones, Jr., of Natchitoches, for appellee.

DREW, Judge.

This is a suit on an open account for the balance due for lumber alleged to have been purchased by defendant.

The district judge of the Tenth judicial district of Louisiana being defendant in the case, he was requested by motion of plaintiff's counsel to recuse himself and to appoint a lawyer of the district, with the qualifications required by law for a district judge, to try the case. The defendant, who is the district judge, refused to appoint a lawyer of the district, but did appoint a judge of an adjoining district.

Plaintiff applied to the Supreme Court (182 La. 1, 161 So. 1) of this state for writs, which were granted; and on trial of said writs that court ordered the district judge to recall the order appointing a judge of an adjoining district and to appoint an attorney of the Tenth district, with the qualifications of a district judge, to try the case. Act 109 of 1932; Act 185 of 1898; Wells v. Blackman, 118 La. 287, 42 So. 939.

Under this judgment on the writ, the defendant and district judge appointed an attorney, John G. Gibbs, as judge ad hoc to try the case.

The original petition in this suit was filed December 26, 1934. The decision on the writ by the Supreme Court was rendered April 1, 1935, and rehearing refused on April 29, 1935. The appointment of the judge ad hoc was made on May 6, 1935. On May 15, following, plaintiff filed a motion to recuse the judge ad hoc for the reason that he had, prior to his appointment, consulted with the defendant with reference to the issues involved in this cause with a view of being employed as counsel to help him; that the special judge prior to his appointment had stated to counsel for plaintiff that he could not be appointed for the reason he was representing the defendant as attorney. Plaintiff further alleged the special judge or judge ad hoc was disqualified from passing on the motion to recuse him and should appoint an attorney of the district with the necessary qualifications to pass upon the motion. Defendant excepted to the motion for the reason that plaintiff had no cause or right of action under the law to require the special judge to recuse himself. The motion to recuse was tried by the special judge and denied. Defendant then filed a plea of vagueness and prayed for an itemized account which, under order of court, was furnished and filed. Defendant then, on April 17, 1937, filed an exception of no cause and no right of action for the reasons:

"(a) that plaintiffs having averred that they were a domestic corporation, fail to allege and show that they have authority to do business in the State of Louisiana, a requisite to having authority to stand in judgment in this cause.

"(b) that plaintiffs having based their action herein on an open account, their petition fails to allege that the account sued on is due and unpaid."

This exception was tried and sustained by the special judge or judge ad hoc in the following written opinion:

"In the preamble of the plaintiff's petition it is set forth that the plaintiff is a corporation domiciled in the city of Natchitoches doing business under the laws of the state of Louisiana.

"This preamble may or may not be a part of the body of the petition.

"One of the questions raised by the exception is that the plaintiff did not allege that they had the right or authority from the state of Louisiana to stand in judgment in this case.

"The exceptions filed is of no cause and no right of action.

"Thereafter the position taken by the defendant that the petition does not show that the account is due and unpaid. The plaintiff may have a right of action and may have a cause of action, but in the absence of the allegation in the petition of authority from the state of Louisiana to transact business for which the corporation was organized, whether it is a foreign corporation or a corporation under the laws of this state. It seems that that would be a necessary allegation.

"The exception of no cause of action is sustained, as to the exception no right of action I do not find that there is any necessity of passing on same."

This judgment dismissing plaintiff's suit was signed on March 17, 1937; the suit was filed December 26, 1934. The minutes of the court disclose that counsel for plaintiff had used every effort to have this cause put at issue and tried before a fair and impartial judge. The result of his efforts is that after two years, two months, and twenty-two days, his cause of action on an open account was dismissed on an exception of no cause of action, and other preliminary exceptions are still held in abeyance to be yet passed upon when we have reversed the case on the exception of no cause of action and remanded it to the lower court. The record clearly discloses a concerted effort on the part of defendant to prevent this cause from coming to trial on its merits. His efforts have met with much favor. Courts of law are for the purpose of expediting justice and should never be a party to delaying justice. The merits of the case may be entirely with the defendant, but, whether with him or against him, the trial of the case should be expedited.

The testimony adduced on the recusation of the judge ad hoc is strong, and, when coupled with the manner in which the case has been handled, is stronger. However, we are without jurisdiction of the question of the recusation of the special judge, the Supreme Court having exclusive supervisory jurisdiction in that case. We will, therefore, refrain from commenting on the question. The only question we have jurisdiction over is the exception of no cause of action passed on by the special judge below.

In another case from the same court, in which the defendant herein was the judge and the special judge herein was counsel for the defendant, the same identical exception was raised and we have this day handed down an opinion in that case, entitled Natchitoches Finance Co. v. Ben Smith et al., 175 So. 915, No. 5506 on the docket of this court. In that case we said:

"Act 10 of 1935 levies a franchise tax of $2.00 for each one thousand dollars of the amount of the capital stock, surplus and undivided profits, determined as provided therein, of each domestic corporation and of all foreign corporations, comprehended within its provisions, with named exceptions. It prescribes the political machinery for the collection of the tax and definitely lays down requirements to be met by the corporations thereby affected. Enforcement of payment of the amount due by any corporation by seizure and sale of its property is authorized, and the steps antecedent to such action are set out. But we find nothing in the act that even intimates that failure to timely pay said tax in whole or part inhibits the defaulting corporation from suing in the courts of the state. If the Legislature had intended such drastic punishment for an offending tax debtor, most certainly such intent would have been incorporated in the act in no uncertain terms; and, of course, if the right to sue is unaffected by arrearage in taxes, surely it is unnecessary to the disclosure of a cause or right of action in a suit to affirmatively aver that the petitioner has paid franchise taxes due by it. Whether such tax is paid annually by a corporation liable therefor is a matter that addresses itself to the State. Individual citizens have no direct or personal interest therein.

"The right to sue in courts of justice to enforce or vindicate vested interests is emphatically vouchsafed to all corporations legally created and existing. Article

443 of the Revised Civil Code; Act 250 of 1928, Par. (a) of Sub-sec. II of Section 12.

"Being creatures of the law and perennially subject to its control, the privilege of appearing in the courts of the state may be qualified or, even for offenses or infractions of the law, denied entirely to corporate bodies. But, as before stated, such a purpose or intent on the part of the lawmaking body should be obvious."

The act herein discussed contains no such restrictions.

■ The petition in this cause in our opinion fully sets forth a cause of action, and is as follows:

"The petition of the Central Lumber Company, Incorporated, a corporation organized and doing business under the laws of the State of Louisiana, and domiciled in the city and Parish of Natchitoches, La., and herein represented by its President D. S. Williams, with respect represents and shows:

### "Article I.

"That James W. Jones, Jr., a resident of the Parish of Natchitoches, La., is justly and legally indebted unto your petitioner in the full sum of Six Hundred and Eighty Two and 75/100 Dollars, with five per cent interest thereon from the 18th day of April, 1933, until paid, for the following cause to-wit:

"That beginning with the year 1927, December 19th, and running up to and including the 5th day of May 1932, D. S. Williams, and the Central Lumber Company, Incorporated, sold and delivered to James W. Jones, Jr., lumber amounting to the sum of Twenty Three Hundred and Seven and 50/100 Dollars, and that the said James W. Jones, Jr., during said time made payments on the said account amounting to the sum of Sixteen Hundred and Twenty Four and 75/100 Dollars leaving a balance due at this date of the sum of Six Hundred and Eighty Two and 75/100 Dollars, with five per cent interest as aforesaid.

### "Article II.

"That the business of D. S. Williams which was doing a lumber manufacturing business was incorporated on January 12th, 1931, and continued to do a lumber manufacturing business and selling lumber and the said James W. Jones, Jr., continued to do business with them, the name of the Corporation being Central Lumber Company, Incorporated.

### "Article III.

"Your petitioner now shows that when the said corporation of Central Lumber Company, Inc., was incorporated, it acquired from Sam K. Williams all of the assets that originally belonged to D. S. Williams when he was conducting lumber manufacturing business, including all accounts then due the said D. S. Williams, one of which was the account of James W. Jones, Jr. The said Sam K. Williams having acquired all of the above named assets from D. S. Williams.

### "Article IV.

"Your petitioner now shows that the said account ran continuously from the 19th day of December 1927 up to and including the 5th day of May 1932, and that the said James W. Jones, Jr., at various times during that period made various payments on the said account, the last payment having been made on the 18th day of April 1933. All of which will be shown by itemized statements on day of trial. The total amount of sales and credits being as shown and alleged in article 1 of this petition.

### "Article V.

"Petitioner avers amicable demand without avail.

### "Article VI.

"Wherefore petitioner prays that the said James W. Jones, Jr., be duly cited to appear and answer this petition and that he be duly served with a copy of the same and that after legal delays and legal proceedings had there be judgment herein in favor of your petitioner and against the defendant James W. Jones, Jr., in the full sum of Six Hundred and Eighty Two and 75/100 Dollars with five per cent interest thereon from April 18th, 1933 until paid, and for all costs of these proceedings and for equitable and general relief."

■ We can see no more reason for the petition setting out that the corporation license tax had been paid than to require it to set forth every detail of the incorporation in order to show it complied with the law of the state, which would necessarily require a copy of the articles of incorporation to be attached to the petition.

The exception is entirely without merit, and is overruled and the case remanded to be proceeded with in accordance with law. Costs of appeal shall be paid by appellee, other costs to abide the final decision of this cause.